UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JO ANN HODGES REYNOLDS,

*Plaintiff-Appellee*,

– against –

COUNTY OF SUFFOLK,

*Defendant-Appellant*.

**MEMORANDUM & ORDER**
26-cv-00404 (NCM)

**NATASHA C. MERLE**, United States District Judge:

This appeal arises from an order of the Honorable Alan Trust of the United States Bankruptcy Court for the Eastern District of New York ("Bankruptcy Court") granting summary judgment to set aside a tax deed as a fraudulent transfer in favor of Jo Ann Hodges Reynolds ("appellee" or Reynolds). *In re Reynolds*, 674 B.R. 39 (E.D.N.Y. 2025); *see also* R. 192–213. The County of Suffolk ("appellant" or "the County") challenges the Bankruptcy Court's holding that the transfer of Reynolds's residence was fraudulent and, thus, avoidable as a matter of law. *See generally* Appellant's Brief, ECF No. 6. For the reasons discussed below, the Court **AFFIRMS** the Bankruptcy Court's order.

## BACKGROUND

On January 16, 2018, Reynolds acquired the deed to her home in Middle Island, a town in Suffolk County, New York (the "Property"). R. 181, ECF No. 4.[1] In 2017 and 2018, Reynolds failed to make property tax payments to the County resulting in a tax lien in the

[1] Throughout this opinion, page numbers for the Bankruptcy Court Record ("R.") refer to the numbers found in the bottom right corner of each page, rather than the page numbers assigned by the Electronic Case Filing system ("ECF"). All other page numbers for docket filings refer to the page numbers assigned by ECF.

amount of $18,453.95 (the "Tax Lien") being placed on the Property. R. 193–94. On January 14, 2022, the County obtained title to the Property through a tax deed (the "Tax Deed"), which was recorded on January 28, 2022 ("Transfer"). R. 194. The Bankruptcy Court determined that the Property, valued at $259,400.00 at the time of the Transfer, was Reynolds's most substantial asset. R. 195.

On March 14, 2022, the County served Reynolds with a "Redemption Notice," which stated:

> Please be advised that the above referenced property has been sold to the County of Suffolk as a result of real property taxes having not been paid. A deed was issued to [the] County of Suffolk and recorded on Jan. 28, 2022. If you are the prior reputed owner ("P.R.O.") or mortgagee(s), pursuant to Local Law No. 16-1976 you may have the right to redeem this property and regain title. An application for redemption must be submitted by July 28, 2022.

R. 51. The Redemption Notice lists the address and contact information for the Redemption Unit of the Suffolk County Division of Real Property Acquisition and Management and warns Reynolds to "NOT DELAY AS THE SUBJECT PROPERTY MAY BE OFFERED FOR SALE AT A PUBLIC AUCTION." R. 51. The Redemption Notice also informed Reynolds that if the Property is sold at a public auction, she is entitled to the proceeds under Suffolk County Admin. Code ("Suffolk Admin. Code") section A40-4(L).

The County timely received Reynolds's application for redemption of the Property on July 19, 2022. R. 62–63. On August 16, 2022, the County sent Reynolds a 60-day Notice to submit a certified bank check by no later than October 15, 2022, in the amount of $16,337.51 to complete the redemption. R. 65–73. The deadline was extended five times through July 19, 2023. *See* R. 75–105. Pursuant to Suffolk Admin. Code section A40-3(B), R. 34, and Suffolk County Code section 29-3(C)(2), R. 42, Reynolds's period to apply for and complete redemption expired 30 months after the date the deed was recorded, or July

28, 2024. *See* R. 195. By the end of the 30-month redemption period, Reynolds owed $18,953.71, which accounted for taxes for the year 2022–2023 and fees. R. 97. Reynolds's right to redeem the property expired without payment. *See* R. 107.

On March 15, 2023, before the redemption period expired, Reynolds commenced her bankruptcy case by filing a voluntary petition for relief under Chapter 13 of the Bankruptcy Code.[2] R. 195. Pursuant to 11 U.S.C. § 362(a), an automatic stay of the enforcement of the Tax Lien was in effect during Reynolds's Chapter 13 proceeding. *See* R. 184; N.Y. Real Property Tax Law ("RPTL") § 1140(1) ("The commencement of a bankruptcy proceeding pursuant to . . . title eleven of the United States code . . . shall stay a proceeding to enforce a delinquent tax lien, to the extent required by the bankruptcy code.").

On March 28, 2024, Reynolds commenced an adversary proceeding in Bankruptcy Court seeking a determination that the Transfer of the Property to the County was a fraudulent transfer under 11 U.S.C. §§ 522(h) and 548(a)(1)(B). R. 195. The parties cross-moved for summary judgment. *See* R. 1–2. The Bankruptcy Court held that Reynolds was entitled to judgment as a matter of law on her § 548 claim that the Transfer of the Property was fraudulent and therefore avoidable. R. 199–203. The Bankruptcy Court ordered Reynolds to pay the Tax Lien in full with 9% annual interest, and pursuant to Federal Rule

[2] Under Chapter 13 of the Bankruptcy Code, individuals may request to develop a plan to repay all or part of their debts over an extended period of time, rather than opting for liquidation. *Isnady v. Vill. of Walden*, No. 21-cv-03730, 2022 WL 358793, at *2 (S.D.N.Y. Aug. 19, 2022) (quoting *Matter of Breuer*, 4 B.R. 499, 501–02 (S.D.N.Y. 1980)). Chapter 13 gives debtors "an opportunity to protect [her] assets by agreeing to repay [her] creditors while retaining [her] property during the . . . proceeding." *Matter of Breuer*, 4 B.R. at 502.

of Bankruptcy Procedure 7070, divested the County of title to the Property and vested it with Reynolds subject to the Tax Lien and final payment of it. R. 212–13.

To date, the County has not sold or otherwise disposed of the Property or transferred the Tax Deed. Appellant's Br. 13.

## LEGAL STANDARD

District courts have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy courts under 28 U.S.C. § 158(a)(1). On appeal, district courts may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree, or they may remand with instructions for further proceedings. *Walker v. HSBC Bank USA, Nat'l Ass'n*, No. 24-cv-08477, 2025 WL 2256654, at *2 (E.D.N.Y. Aug. 7, 2025).[3] "A district court generally reviews the findings of fact of a bankruptcy court for clear error and reviews conclusions of law *de novo*." *Salim v. VW Credit, Inc.*, 577 B.R. 615, 621 (E.D.N.Y. 2017). A bankruptcy court abuses its discretion "when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *In re Soundview Elite Ltd.*, 646 F. App'x 1, 1 (2d Cir. 2016) (summary order) (citing *In re Highgate Equities, Ltd.*, 279 F.3d 148, 152 (2d Cir. 2002)).

## DISCUSSION

### I. The Bankruptcy Court's Decision

The Bankruptcy Court held that the Transfer was avoidable as a fraudulent conveyance under § 548(a)(1)(B) of the Bankruptcy Code. R. 193. Section 548 "sets forth the powers of a trustee in bankruptcy . . . to avoid fraudulent transfers" of a debtor's property. *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 535 (1994). Transfers include "the

---

[3] Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

creation of a lien," "the foreclosure of a debtor's equity of redemption," or "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with . . . property; or . . . an interest in property." 11 U.S.C. § 101(54). While the text of § 548 provides "trustee[s]" with the power to avoid fraudulent transfers, § 522(h) of the Bankruptcy Code also empowers debtors to set aside fraudulent transfers under § 548. *Miranda v. TLB 2019 LLC*, No. 25-cv-00533, 2025 WL 1530575, at *2 (E.D.N.Y. May 29, 2025); *see* 11 U.S.C. § 522(h) ("The debtor may avoid a transfer of property of the debtor . . . if . . . [s]uch transfer is avoidable . . . under section . . . 548.").

Under § 548, a debtor may avoid the fraudulent transfer of property if:

> (1) the debtor had an interest in property; (2) a transfer of that interest occurred on or within two years of the bankruptcy petition; (3) the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer; and (4) the debtor received less than a reasonably equivalent value in exchange for such transfer.

*Gunsalus v. Cnty. of Ontario*, 37 F.4th 859, 864 (2d Cir. 2022) (first quoting 11 U.S.C. § 548; and then citing 11 U.S.C. § 522(h)).

For each element, the Bankruptcy Court ruled for Reynolds. The Bankruptcy Court found, and the parties do not dispute, that Reynolds owned the Property before the Transfer and that the Transfer occurred within two years of Reynolds filing her bankruptcy petition. R. 200.

The third element requires a debtor to show that "the sum of [the debtor's] debts are greater than all of [the debtor's] property . . . exclusive of . . . property transferred" and "property that may be exempted from property of the estate Under Section 522 of that title." R. 200 (quoting 11 U.S.C. § 101(32)). At the time of the transfer, Reynolds had $43,795.00 in assets composed of $28,100.00 for the value of real property in South

Carolina and $15,695.00 in other assets. R. 201; *see* R. 125. In addition to the Tax Lien owed to the County, the IRS claimed Reynolds owed $76,679.53. R. 201. Thus, the Bankruptcy Court found that the "Transfer rendered [Reynolds] insolvent as a matter of law" because the sum of Reynolds's debts, including the $76,679.53 IRS debt, was more than the $43,795.00 in assets. R. 201.

The final element requires a debtor to show she received less than reasonably equivalent value in exchange at the time of the transfer. *See DuVall v. Cnty. of Ontario*, 83 F.4th 147, 152 (2d Cir. 2023) (analyzing whether the plaintiff received reasonably equivalent value "on the date of [the] transfer"). The Bankruptcy Court explained that reasonably equivalent value is "'substantially comparable to the worth of the transferred property[]'" and "does not require property be transferred for market value." R. 201 (quoting *BFP*, 511 U.S. at 548). The Bankruptcy Court determined that the Transfer was not for reasonably equivalent value, and thus, was avoidable as a fraudulent transfer. R. 199, 202. It is the Bankruptcy Court's findings here that the County challenges.

The County raises two issues on appeal: (1) "Was it reversible error for the Bankruptcy Court to hold that '[w]ithout a public auction or third-party buyer, there has not been an opportunity for fair market forces to allow [Reynolds] to receive reasonably equivalent value?'" Appellant's Br. 14 (quoting R. 202); and (2) "Did the Bankruptcy Court exceed its discretion . . . when it made the prediction of 'years later' for the homeowner to receive reasonably equivalent value . . . ?"[4] Appellant's Br. 9 (quoting R. 199). The County asks the Court to answer these questions in the affirmative. Both issues bear on the final

---

[4] To improve readability, the quote has been modified to replace capital letters with lowercase letters.

question of whether the debtor received less than reasonably equivalent value in exchange for the transfer of the party in which it had an interest.

## II. Analysis

The issues presented on appeal—whether the Bankruptcy Court erred when it determined that Reynolds did not receive reasonably equivalent value at the time of the Transfer and determined that Reynolds's opportunity to receive surplus equity could be years after the transfer—are questions of fact reviewed for clear error. *See Cnty. of Clinton v. Warehouse at Van Buren St., Inc.*, 496 B.R. 278, 283 (N.D.N.Y. 2013) (reviewing bankruptcy court's finding that reasonably equivalent value was not received for clear error). After a careful review of the Bankruptcy Court's Order and the record, the Court finds no clear error in the Bankruptcy Court's findings.

To determine whether a transfer is for reasonably equivalent value, courts consider "whether the debtor has received value that is substantially comparable to the worth of the transferred property." *BFP*, 511 U.S. at 548. This standard does not require property to be transferred at fair market value, but there cannot be a huge gap between the total amount of taxes due to the County and the actual value of the property at the time of the transfer. *Id.* at 537; *see Gunsalus*, 37 F.4th at 864–66 (same) (finding transfer of $22,000.00 property for a $1,290.00 tax debt "would give the County a windfall at the expense of the estate, the other creditors, and the debtor—which is precisely what the [Bankruptcy] Code's fraudulent conveyance provisions are intended to prevent"); *In re Hampton*, No. 17-2009, 2020 WL 833045, at *5–6 (Bankr. W.D.N.Y. Feb. 19, 2020) (finding no reasonably equivalent value given for property valued between $27,000.00 and $60,000.00 where delinquent taxes were $5,157.73 or between 8.6% and 19.1% of the appraised value), *aff'd sub nom. Hampton v. Cnty. of Ontario*, No. 20-03868, 2022

WL 2443007 (2d Cir. July 5, 2022); *see also In re Herkimer Forest Prods. Corp.*, No. 04-cv-013978, 2005 WL 6237559, at *4 (Bankr. N.D.N.Y. July 26, 2005) ("The value of the Properties is approximately 11 times the debt. Clearly, the value of the Properties is not proportional to the Debtor's tax debt, and the transfer is voidable as fraudulent under Code § 548.").

Here, the Bankruptcy Court found that in January 2022, the County executed a Tax Deed, transferring Reynolds's Property to itself to satisfy a delinquent tax debt. R. 194. At the time of the Transfer, the Property was valued at $259,400.00, while the Tax Lien was only $18,453.95. R. 194–95. The Bankruptcy Court determined that as a matter of law, that exchange was not for reasonably equivalent value. R. 202.

The Bankruptcy Court's determination that Reynolds's debt was not "substantially comparable" to the value of the Property was not clearly erroneous. R. 201 (quoting *BFP*, 511 U.S. at 548); *see In re Hampton*, 2020 WL 833045, at *5; *In re DuVall*, No. 19-02011, 2021 WL 646802, at *6 (Bankr. W.D.N.Y. Feb. 18, 2021) (finding no reasonably equivalent value given on a $91,000.00 property where tax lien was $22,434.40 and avoiding as a fraudulent transfer), *order aff'd, appeal dismissed sub nom. DuVall v. Cnty. of Ontario*, No. 21-cv-06236, 2021 WL 5199639 (W.D.N.Y. Nov. 9, 2021), *aff'd*, 83 F.4th 147 (2d Cir. 2023); *Clinton Cnty. Treasurer v. Wolinsky*, 511 B.R. 34, 36–38 (N.D.N.Y. 2014) (avoiding as fraudulent the transfer of property sold at a public auction for $25,500.00 where the value of outstanding taxes was $2,406.45).

The County does not seem to directly dispute that a transfer of property valued at $259,400.00 to cover an $18,453.95 tax lien is a "windfall." *Gunsalus*, 37 F.4th at 864–66. Rather, the County appears to argue that it would not have kept any surplus if allowed to sell the Property. Appellant's Br. 20. Specifically, the County contends that it was

prevented from holding a public auction or otherwise selling the Property to a third-party buyer, first during the redemption period to allow Reynolds an opportunity to regain title, and again, due to the mandatory stay after Reynolds commenced the underlying adversarial proceeding in Bankruptcy Court. Appellant's Br. 15. The County urges that this fact—that it was statutorily prohibited from selling the Property—should not be held against it in finding the exchange unequal. If the County had been permitted to sell the Property, it would have done so according to local and state laws, which establish a mechanism to return surplus equity to the prior owner that is "triggered immediately" when the County records a tax deed. Appellant's Br. 16. Thus, the County contends, the Bankruptcy Court's "prediction" that Reynolds could not receive equity until "years later" is factually incorrect. Appellant's Br. 15.

The County is correct that local and state law charts out a process for a prior owner to receive surplus value from the sale of property acquired by tax deed. Appellant's Br. 16–21.[5] After the redemption period concludes and the tax deed transfers to the County, the County is mandated to commence the selling process "immediately." Suffolk Admin. Code § A40-4(A). Property the County acquired by a tax deed is appraised, Suffolk Admin. Code § A40-4(F), based on an appraisal methodology that establishes fair market value, Appellant's Br. 16. The property is then sold at a public auction or in some other manner. Suffolk Admin. Code § A40-4(G).

---

5 Surplus value is defined as "the net gain, if any, realized by the tax district upon the sale of tax-foreclosed property, as determined in the manner set forth [by New York Real Property Tax Law § 1196]." RPTL § 1195(3). The County's Code uses different inputs to calculate surplus for properties that are sold at a public auction and for properties whose "disposition is made in any other manner." Suffolk Admin. Code § A40-4(L)(1)–(2).

Any entity "whose interests were extinguished by the foreclosure of the delinquent tax lien," i.e., the prior owner, may apply to the County's Division of Real Property Acquisition and Management to receive surplus proceeds from a sale, if there are any after "all taxes along with applicable penalties and interest and . . . all valid liens, judgments, or encumbrances" that existed when the County acquired the tax deed are deducted. Appellant's Br. 19; *see also* Suffolk Admin. Code § A40-4(L). Under RPTL, the County must calculate the surplus within 45 days of the sale, § 1196, and give a prior homeowner at least three years to claim the surplus proceeds, § 1197(4).[6]

However, the County's reliance on the word "immediately" in the Code, *see* Suffolk Admin. Code § A40-4(A), to suggest that Reynolds would receive reasonably equivalent value for the transfer within a reasonable timeframe misses the point. As the Bankruptcy Court correctly determined, Reynolds's "right to receive the [surplus] value has not been triggered." R. 202. Even though local and state law allow those with interest in a property to apply for surplus proceeds, the "existence and amount of a surplus" necessarily require a sale. RPTL § 1196. Here, there was no sale to "trigger[]" the process for reasonably equivalent value to be exchanged. Appellant's Br. 16. Moreover, whether reasonably equivalent value would be exchanged in the future does not change that the property had already transferred to the County by Tax Deed. R. 194. The Bankruptcy Court was under no obligation to reach the County's hypothesis that if a sale occurred consistent with local and state law, then reasonably equivalent value would be exchanged. And the County has

[6] Reynolds contends that the 2024 amendments to the RPTL are inapplicable because "the redemption period and bankruptcy filing dates were in 2023." Appellee's Br. 3 n.1. The Court need not resolve this question. The amendments apply to properties "sold on or after May 25, 2023," *Sikorsky v. City of Newburgh*, 136 F.4th 56, 61 (2d Cir. 2025), and the Property has not been sold. Whether or not the amendments would govern a future sale, they provided Reynolds with nothing at the time of the Transfer.

presented no case law to support its contention that the Bankruptcy Court was required to accept its speculation that a reasonably equivalent value might later be obtained.

The County's argument that its Code does not permit it to retain the surplus and its related argument that where local and state procedures "allow[] for competitive bidding for the value of property, . . . [t]he sale price . . . [is] conclusively deemed reasonably equivalent value" are unavailing. Appellant's Br. 20 (quoting *BFP*, 511 U.S. at 539–42, 545). First, the County's reliance on *BFP* is misplaced. The Supreme Court in *BFP* rejected the contention that tax foreclosures that comply with state and local law compel the conclusion that the transfer was in exchange for reasonably equivalent value. *Gunsalus*, 37 F.4th at 865. The Supreme Court noted that "*BFP* 'covers only mortgage foreclosures . . . . The considerations bearing upon other foreclosures and forced sales (*to satisfy tax liens, for example*) may be different.'" *Gunsalus*, 37 F.4th at 865 (quoting *BFP*, 511 U.S. at 537 n.3).[7]

Even if the Court were to apply *BFP*, the County fails to show that the process it applied here is entitled to the presumption that reasonably equivalent value was

---

[7] Since *Gunsalus*, New York amended its procedures to "put[] in place a process by which an owner can claim and pursue [] surplus [equity] from a sale of tax-foreclosed property." *Cavaluzzi v. Cnty. of Sullivan*, 825 F. Supp. 3d 279, 287 (S.D.N.Y. 2026) (quoting *Sikorsky v. City of Newburgh*, 136 F.4th 56, 61 (2d Cir. 2025)). These laws were amended in light of the Supreme Court's decision in *Tyler v. Hennepin Cnty.*, which held that there is an unconstitutional taking in violation of the Takings Clause when a county keeps the surplus proceeds accrued from a tax foreclosure. 598 U.S. 631, 642 (2023); *see Cavaluzzi*, 825 F. Supp. 3d at 287 (explaining effect of *Tyler* on New York's statutory scheme). Appellant suggests that because state law creates a mechanism for Reynolds to receive surplus equity consistent with *Tyler*, transfers in compliance with that mechanism are inherently exchanged for reasonably equivalent value. Appellant's Br. 19–20. But without a sale, the mere possibility that "equity *would have eventually* been made available to the debtor," Appellee's Br. 5, fails to satisfy the test under § 548. As the Bankruptcy Court determined, even though the Suffolk County Administrative Code presents no Takings Clause problem, the transfer was still avoidable under the Bankruptcy Code as a fraudulent transfer. R. 199. *See Wolinsky*, 511 B.R. at 41 ("The plain language of Bankruptcy Code § 548 permits the Trustee to avoid 'any transfer'—including a valid state tax foreclosure proceeding—that occurred within two years prior to the filing of the bankruptcy petition and involved actual or constructive fraud.").

exchanged at the time of the Transfer. Some courts have found that, in certain cases, *BFP* does entitle tax sales to the presumption that reasonably equivalent value was exchanged. *See, e.g.*, *In re Susco*, 673 B.R. 120, 140 (Bankr. D. Vt. 2025) (holding Vermont's tax sale statute is entitled to the presumption that reasonably equivalent value was exchanged); *In re Jacobson*, 523 B.R. 13, 21 (Bankr. D. Conn. 2014) (applying the *BFP* presumption to a process that included multiple notices, a public auction, and competitive bidding). In those cases, courts have compared the state or local law at issue with the scheme the *BFP* Court found resulted in reasonably equivalent value for the transfer. *See Jacobson*, 523 B.R. at 21; *In re Susco*, 673 B.R. 120, 140; *In re Smith*, 811 F.3d 228, 239 (7th Cir. 2016) (finding that a state's tax foreclosure protections must compare favorably to the mortgage foreclosure protections in *BFP* in order to receive the presumption of reasonably equivalent value); *In re Hackler & Stelzle-Hackler*, 938 F.3d 473, 479 (3d Cir. 2019) (same). That scheme included "judicial oversight[,] . . . notice to the defaulting borrower, a substantial lead time before the commencement of foreclosure proceedings, publication of a notice of sale, and strict adherence to prescribed bidding rules and auction procedures." *BFP*, 511 U.S. at 541–42.

Here, the Bankruptcy Court found that Suffolk Admin. Code section A40-4 cited by the County does not provide judicial oversight at any point in the process. R. 202. On appeal, the County does not point this Court to another state or local law to the contrary or a fact in the record that shows the Transfer was made with the protection of judicial oversight. *See In re Miranda*, 667 B.R. 386, 395–96 (Bankr. E.D.N.Y. 2025) (finding no reasonably equivalent value was exchanged for a tax deed transfer made "without . . . the protections of judicial oversight"), *aff'd sub nom. Miranda v. TLB 2019 LLC*, No. 25-cv-00533, 2025 WL 1530575, at *4 (E.D.N.Y. May 29, 2025); *see also Balaber-Strauss v.*

*Town of Harrison (In re Murphy)*, 331 B.R. 107, 119–20 (Bankr. S.D.N.Y. 2005) (analyzing the differences between New York tax forfeiture law and New York mortgage foreclosure law, and rejecting the assertion that *BFP* applies to tax forfeitures). Thus, the Court finds no basis to presume that appellee would receive a reasonably equivalent value.

Accordingly, the Court finds there is no clear error in the Bankruptcy Court's findings and does not disturb its conclusion that the conveyance was fraudulent as a matter of law under § 548.

## CONCLUSION

For the reasons set forth above, the Court **AFFIRMS** the judgment of the Bankruptcy Court.

**SO ORDERED.**

/s/ *Natasha C. Merle*
NATASHA C. MERLE
United States District Judge

Dated: October 21, 2026
Brooklyn, New York